Good morning, Your Honors. My name is David Dimitrick. I represent the appellants Gary and Pamela Zeebarth, and I would like to reserve five minutes. I'll begin with the 727 claim. And this 727 claim is based upon the false oaths, many false oaths. We've recounted over 62 of them in Mrs. Adams' schedules. The most blatant one we contended was her representations in her means test calculations, that she paid the first mortgage on a property that she also said was Mr. Adams' separate property, and that she also paid monthly mortgage payments on a second deed of trust, both of which she admitted she never did. And in the second, it was a false deed of trust that Mr. Adams had created. And those false statements remain, as I speak today, as false statements in her schedules. She has defiantly refused to amend her schedules. Her best explanation... You know, we're not trying a factual case, so you don't need adverbs here. I'm sorry, pardon me? I said, we're not trying a factual case, so you don't need adverbs here, okay? The principle involved is whether her statements are false statements, and they continue to be false statements. She made them, and then the question is whether she had an obligation to amend her schedules. We know that she has refused to do that. Were they material? And if you took those statements out, those figures out of the means test, would she have had a positive disposable income? Yes. And then those false statements, when viewed in the context of her other false statements, such as her Schedule H co-debtor statement, in which she simply checks the box that there are no... Remind me before we go too far, what does her mental state have to be when she makes that false oath? Her mental state has to be that it's, according to what I understand the 727 claim to be, an intent to make a false statement to misrepresent something. Okay, so it has to be knowingly? I think so. Does it have to be fraudulently? I think so. That's what the cases say. I said that in my briefs. Okay. And at some point, though, in time, when you gain enough information to learn, if she somehow misunderstood the means test calculations, which the instructions of which are clear enough to impart the knowledge that you can only put numbers in those boxes if you own the property. It's got to be a property that you own. Mrs. Adams knew she didn't own that property. Is this just a factual question? Are we just talking about whether the bankruptcy court made a clear error or fact? Or are we talking about something else? Well, we are talking about something else. Because one of our other criticisms is that the bankruptcy court didn't provide sufficient factual findings. But that would be a factual question. I guess, right? I would respectfully disagree. I guess you would have to look at the document itself and draw the conclusion. I think it's a legal question. Well, what I'm trying to hone in on here is we need to be convinced that the judge made a mistake. Yes. Not that you had a great story, but that the judge made a mistake. And what I guess I'm trying to figure out is what part of that isn't an assessment of the facts? Because an assessment of the facts is that she's got to be clearly in error and her credibility assessments are entitled to the highest deference. So how do we get off? If you need us to get off the factual plane here, how do you want to do that? May I come back to the factual plane? Of course. But if there's a de novo piece of this thing, because it's a question of law, I'm just curious to know what that is. All right. I'll answer that question first and then come back. Okay. We think that the uncontradicted evidence that was in this case, her admissions, give you the de novo right to conclude differently from the factual. Meaning it was clear. The judge made a clear error in assessing the facts. I don't know that I'd use those words because... Well, you kind of have to if it's a factual question. No, I'm not so sure I agree with that respectfully, Your Honor. Okay. Because the cases that we cited in our opening brief say that if some evidence is uncontradicted, you do look at it de novo. Okay. And so her admissions, that she never made a payment, represent admissions of an uncontradicted evidentiary character. I think we're disagreeing about de novo and I think I've confused you and made your job harder because what I was trying to suggest is, I mean, look, de novo is good for you. We start all over again, right? But the factual questions, we have to give her a lot of deference. So if you're going to tell me there's clear error, have at it. And if you're right, you win. But that's a factual question. The question is where are the facts and where's the law here? That's my question. Because here's what I'm sensing. You had this long pretrial stipulation. You had all these facts you wanted the court to worry about. What the court says at the end of the day is, look, I just don't find the right intent either under 523 or 727. And that's, I usually think of that as a factual question, but maybe it's more than that. Well, I don't think that the court sufficiently concluded one way or the other because when you examine the three or four sentences on 727. Yeah. I'll grant you it was short. It was short. Yeah. And to say that those rise to the level of findings of fact, I think is an incorrect assessment of those four sentences because one of them is simply this. I think it's the first one. The court finds that Mrs. Adams testified credibly about, or her explanations were credible for the way she filled out her schedules. That's impossible. That is impossible to reach that conclusion because the only evidence under the means test calculations which was that she, A, didn't own the property to even fill in those blanks, B, she never made any of those payments, and C, with regard to the second false chase one deed of trust, there were no payments due. She knew those things at the time, and we established this as uncontradicted evidence. She knew those things when she signed her schedules. Let me stop you. I hate to argue facts, but let me just see if I'm right about something. Wasn't it her testimony, whether you found it credible or not, that she didn't really get the whole chase one issue until much later, or are you saying something more, a little different from that? I think I'm saying something different. Okay. Look, I have a checkbook out in my car, and sometimes I write checks to my mortgage holder. I know whether I do that or whether I don't do that. Okay. She admitted she never did that. Oh, I'm sorry. So whether the lien was valid or not, she never made a payment? She never made a payment, yes. Thank you. Okay. And so if you never make a payment, you can't fill in those blanks, and those blanks are critical. But didn't her attorney also testify that for the chase one, he filled that out by basically averaging out the balloon payment over a period of months and putting that number in there? Wasn't that the summary of what he said on that issue? In a nutshell, yes. But that was his decision, right, to do it that way? Not the way I read her stipulations, because she's also testified that she got the blank forms from Mr. Cumming. She enlisted some assistance from her husband, but that she was the one who completed all of the forms and gave them back to Mr. Cumming. So then we're left with this question, which the bankruptcy court didn't resolve. Which one of these two contradictory explanations for how these schedules got filled out was the right one? And I don't think you can come to the conclusion that in the face of these two contradictory explanations, that Mrs. Adams testified credibly, particularly with regard to this chase one, or the means test calculation. So what we have here is the judge makes this ultimate finding that when she filled out these schedules, even though they contained mistakes, even though they contained material mistakes, that she still wasn't doing so with the requisite intent such that her discharge could be denied under 727. Now, you find that to be implausible. Impossible. Plausible. Implausible to be sure, but plausible in this case because there's no evidence that she ever made those payments. If I read a schedule... I guess I see that as a fairly high standard kind of a factual question because what you're basically saying is no judge, having seen that evidence, could have made that determination. In this case, yes. That's what you're saying. Yes. That's clarity. That's clarity. Now, even if I was wrong and that Mrs. Adams could somehow pretend to be confused by the very clear instructions in box 42 of the means test calculations, a time came when she knew that those representations were false. And so the question arises, did she have a duty to amend her schedules at that time? We could pick a number of times by which Mrs. Adams can be said to have had that knowledge and at least at the latest, when the joint pretrial stipulation was made containing all that it contained, identifying all these things, Mrs. Adams knew that she should have amended her schedules to satisfy her duty. But even in that joint pretrial stipulation, in her briefs at trial, here again I say that she defiantly says, don't have to. It's not material. It won't do any good. Well, if that's the law, then I think you should write an opinion that says, what other courts have said about the duty to amend. With that advice, if you stop now, you have three and a half minutes for rebuttal. I'm very sorry, thank you. Counsel, there are two of you. Have you divided your time? We have, Your Honor. Good. Tell me how much time. Good morning, Your Honors. Fritz Furman appearing on behalf of David Brent Adams, the appellee. I would like five minutes and I'll say ten minutes to my esteemed colleague. Thank you, Your Honor. Mr. Adams was dismissed out of this case early and properly. So, he's not a debtor in this case. He's never been a debtor in this case. He didn't get a discharge in this case. There's no basis for a non-dischargeability debt because he didn't get a discharge, he didn't file a petition, he didn't ask for a discharge in this case. Importantly, they, on the very day that they were dealing with the complaint and the 12B6 motion, they filed a motion for relief from the automatic stay, which they didn't have to file as to my client because there was no stay in effect as to my client. There was no co-debtor stay. And they proceeded, which the court granted, although there's no order entered, which is not problematic, but there was no order entered, but they come and tell the court that you have to abstain, abstention is mandatory, and there are non-parties in this case, which, or non-debtors in this case, which we don't have jurisdiction over. So, ancillary jurisdiction is never raised or argued as defense to the 12B6 motion. And the court essentially said, and I think correctly so, Mr. Adams isn't a debtor here and I'm not going to litigate a discharge for somebody that isn't going to get a discharge. So, I think the court properly granted the 12B6 motion without leave to amend and there's no there's no problem with that order. The court ought to affirm that order. Secondly, I don't think that this court has jurisdiction over Mr. Adams in that there was no timely appeal filed. At the time that the 12B6 motion was granted, it arguably would have been interlocutory, however an appeal could have been filed with seeking relief to file an interlocutory appeal, they could have made a motion under Rule 54 to enter a judgment immediately, or they could have waited until there's a final judgment in the case and then filed a notice of appeal. The first notice of appeal in this case, Your Honor, says nothing about David Adams. Aren't all the prior orders subsumed in the final judgment? Don't you just appeal from the final judgment and then everything's fair game at that point? Well, not necessarily, Your Honor, because you have to name in your notice of appeal the judgment and the judgment in this case is to the second amended complaint of which Mr. Adams was not a party, and you have to name him, and as a person grieved or to be the order to be appealed from, that wasn't done. Even this amended notice of appeal says nothing about Mr. Adams. It does attach a copy of the order, but that's well past the fact, and this is not a situation where we're simply changing the language in our notice of appeal. We're adding a new party past the deadline to file an appeal and it's jurisdictional and the court in my view really has no jurisdiction to hear this appeal that that judgment was final. Finally, Your Honor, there's officially a stop. They came and jumped up and down and said we need to go back to state court so we can try this issue. They did. They got a judgment. Not a judgment for fraud, not a judgment for breach of fiduciary duty, but simply a $600,000 judgment on a breach of contract claim. The judge, who is a former bankruptcy trustee herself, didn't make any sufficient findings to give the plaintiffs in this case any collateral estoppel relief. They got a judgment and they asked to go back and get a judgment. They litigated in state court to verdict. They got a judgment. They didn't like the judgment and now they want the bankruptcy court to one, render an advisory opinion as to whether he gets the benefit of 524, which wasn't ripe and wasn't properly before the court. She correctly said, look, if he tries to abuse the bankruptcy code, come back and see me and we'll address it at the time. Certainly it was not ripe and she had no jurisdiction over him. He clearly objected to jurisdiction and was not properly before the  before this court. The court ought to affirm Judge Bauer's rulings as to my client. Thank you, counsel. What are the statistics on the microphones today? How is this microphone doing? We all know for a while. Who are you? Bill Wall, debtor and defendant, Sharon Mary Adams. I want to address a couple issues. First, obviously, we have a huge excerpt. Part of the reason, there's actually been a theme I've noticed through the case, is I believe there's a little bit of a lack of precision with respect to some of the arguments that were made by counsel, specifically with respect to the means test. That is, I believe, though I couldn't find it in the pages, that the means test states what the debtor's counsel, and I didn't prepare the petition or anything like that. I was just involved in the litigation. I believe the box for the means test instructs secured debts to be divided up into equal payments, whether or not the payments have been made. I believe it speaks of the obligation. Again, I could be incorrect about that, but the reason I bring it up, whether I'm right or wrong, is it's an issue that, as I said, there's been a lack of precision throughout the case, some of which Judge Bauer was absolutely fine with. As you can see from the excerpts, we had an accelerated . . . I want to be precise now that I've complained about a lack of precision. The trial was bifurcated in a way, changed at the last minute testimony. Someone was taken out of order, I believe, to accommodate a witness. None of this is wrong. What I am saying is I'd like to encourage the court to make sure we use the same precision that should be applied, as opposed to what's seen in some of the arguments. I want to take a step back and really echo Judge Lafferty's thoughts, or what I understood them to be thoughts, is the clearly erroneous . . . Yes, they were definitely thoughts. I'm not trying to project them on you. Project a little bit, but we'll see how that goes. What I'd like to say regarding the standards, one, it's clearly erroneous. It seems we're not arguing facts. Candidly, I came up with this in the car over here, and then walking across the street, I realized you must have heard it a hundred times, but Occam's Razor tells us the most simple explanation. What I would argue, or ask the court to consider, is that Judge Bauer did take the most simple explanation that was testified to by all parties, which was . . . Excuse me, I'm going to call them Sharon and Brent, because they're both Adams. Sharon took what facts she had. She believed them. She consulted with her attorney. He believed them, and they all . . . They did have no knowledge of fraud when taking those facts and making those schedules. And as the cases make abundantly clear, even if you don't believe that's true, even if you don't believe that's true, I'm very hard-pressed to say that it's clearly erroneous when we have a witness . . . When the judge makes the specific finding, the witness was credible. And obviously the court knows they weren't there to make those same findings. With the clearly erroneous standard, and I obviously happen to believe it's right anyway, but I certainly even if I disagree, I certainly don't believe it rises to clearly erroneous. And that . . . Excuse me, that's the standard we're talking about. You know, with respect to . . . I believe he . . . Counsel raised a point about the admissions and those were clear error. I just point out there's no case that I've found that says if certain . . . I don't even say admissions, that a credibility passes . . . You know, I've never seen a court reverse the decision when a judge made a credibility finding. And I believe Judge Ferris actually asked another question which was really important, which was, isn't there a knowledge component . . . Excuse my throat. Isn't there a knowledge component that needs to be shown? So yeah, we have a four-page opinion. It was, as Judge Lafferty pointed out, brief. But it didn't need to be any longer. Again, it's the simplest approach. She was forthright every step of the way. She was wrong, and even the I don't know why she believes her husband, but she does. And that was credible. So there's nothing which shows the knowingly intent unless we bury somewhere deeply into the joint pretrial statement. And even then, it's arguing that an implication from the pretrial statement contradicts live testimony. And again, I don't . . . I can't see a circumstance where that's clearly erroneous. I think I've talked quite a bit. I'm happy to answer . . . I've got a small question about something. It's not a huge part of this, but it's . . . We couldn't square it in our own minds. Part of the original . . . Part of the litigation here involved an objection to exemptions. Yes. And I'm a little . . . We're a little worried that might have kind of fallen by the wayside here, because what seems to have happened is there was a second . . . There was an amended complaint, and the judge said quickly that the objection was quote, just too late, close quote. Okay? And although that appears to have disposed of the matter, it came up again at trial, and the judge determined that there was no evidence presented with respect to the exemptions. So we're a little unclear what the procedural status of that was from time to time. She seems to have ruled as a matter of law without a whole lot of findings as to why the objection would have been too late, and at the same time without anything further, she seems to have faulted the plaintiff for not producing any evidence at a trial where maybe they weren't expecting they would have to. So we're not finding a whole lot of findings one way or the other on that. Do you see this differently? Um . . . I know this isn't the biggest part of the case, but it's got to . . . We've got to dispose of it, too. I mean, and truthfully, Your Honor, the exemptions were around $150,000 in retirement. No, it was about $212,000. Thank you. With that being said, my client would certainly consider it a big deal, so I'm glad the court asked. And I'm sure the creditors would as well. With that said, candidly, I'm a bit at a loss to recall the procedural history because I substitute into the case about the time the SEC amended. Okay. But from what we can tell, there don't seem to be any findings in support of the proposition that the objection was too late. And we really weren't sure what to make of the observation at the end of the trial that, well, nobody gave us any evidence about this and the plaintiff should have. Were I the plaintiff, I'm not sure what would have been expected from me at that point. So we're just trying to figure out what do we do with that. I'd make a couple comments. Number one, I think . . . I believe, though, I'm not sure, in the 130-page joint pretrial statement, something was said about it and it was rejected. I could be . . . again, I could be wrong. I wasn't as focused on this issue. The second thing I would say is believing it was brought too late is a factual finding in and of itself. It can be construed as a factual finding. Yeah, but you don't nearly say why it was too late. No, fair enough. And I guess the other thing I would say along those lines is we look at the . . . I think I pointed this out in my report, but if you simply put the amount of the objection . . . excuse me, the amount, like you said, $112,000, compared with the median income of Orange County, assuming she wants to retire there . . . Well, I mean, a judge can make those findings, but I think somebody needs to. I mean, we can't do it, right? I . . . to a certain extent, I disagree that I think you could take judicial notice that Congress had determined this is the median . . . excuse me, I believe it's the IRS determined and the bankruptcy code incorporates this is the median income in the area. But judicial notice is a form of fact-finding, and I don't think we get to do that. I will respectfully disagree with the . . . Okay. . . acknowledgement. I wasn't prepared for a large judicial notice discussion, and . . . Well, this isn't one. Thank you. Okay. I think there was one other thing I might have . . . Oh, I'm sorry. Judge Ferci asked a question about whether the omission was material. There was no evidence of that, and I believe that's important that there was no evidence of that. You can't just say, well, we take out this debt, she doesn't pass the means test. You have to, again, show in multiple places do we know that if you took that debt out, would the remaining debts be business debts that she wasn't possible? It's a whole . . . You know, they're all interrelated, and you can't just say, well, there's a misstatement here, and now what I would say is an admitted . . . not even what I would say, what Judge Bauer said, an admittedly knowing misstatement. So, away it goes. If I can answer a question in 13 seconds, I will. Thank you very much. Thank you, counsel. You have that three minutes and I promised you for rebuttal. Thank you. With regard to Mr. Adams' remarks, or remarks made on his behalf, the concept on which the bankruptcy . . . I'm sorry, the principle on which the bankruptcy court made its decision was that it had no jurisdiction. We contend the bankruptcy court erred because it never evaluated the circumstances under the principle that we think should have been applied to the circumstances. Isn't the real problem there that the bankruptcy court may have jurisdiction to sue Mr. Adams, or the debtor may have jurisdiction to sue Mr. Adams for the creditor . . . for the debt, and determine the debt. But to determine whether he could get a discharge or not would not be a case in controversy, would it? No, I agree with that. But damages were an issue, and the related jurisdiction could have covered a damage action. Had there been a state court action? Pardon me? Had there been a state court action on damages? Yes. So there wouldn't have . . . that wouldn't be . . . There had been. I forget the timing of it. We ultimately obtain a judgment against Mr. Adams. I think that was done . . . that judgment was entered after he was dismissed. So he was dismissed first on grounds that just the court just didn't have jurisdiction. I think that's wrong. I'd like to leave that because some other matters I'd like to cover. With regard to the arguments made on behalf of Mrs. Adams, it seems to me that what we have at issue in this case vis-a-vis her arguments is simply the statement, I don't need to provide an explanation for why I did what I did in my schedules, even though evidence was adduced under Aubrey to shift the burden to her to provide that explanation as part of their argument. The other part of their argument is, as I've tried to dwell on with regard to the means test calculation, that the explanation is I relied on my attorney. That explanation at some point in time lost all merit because there was . . . we established that she had never made any of those payments. She didn't own the home, and the instructions are clear enough to have required her to amend her schedules, and had she done that one, she would have failed the means test and would have either had to have been dismissed or converted into a Chapter 13 plan by which she would have had to make some payments. She makes a handsome salary every year. When we get to this business of explanations under Aubrey, Aubrey hasn't been developed too much in terms of what's satisfactory, what's not satisfactory in terms of an explanation, but in this case, even if one looks at the explanations that Mr. Cumming gave, they still fail because you can average monthly payments all day long if that's the meaning of that test, but you can still not fill in that blank when you are in the property and when you are not... On that note, I'm going to ask you to close your argument. Thank you very much. The matter is submitted. Please call the next case.
judges: Kurtz, Faris, Lafferty